# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# GEORGIA ATLANTA DIVISION

|  |  |
|---|---|
| OMEGA PATENTS, LLC<br>a Georgia limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BAYERISCHE MOTOREN WERKE<br>AG, a Foreign company, and BMW OF<br>NORTH AMERICA, LLC,<br><br>Defendants. | **Case No.: 1:20-cv-01907-SDG**<br><br>JURY TRIAL REQUESTED |

## DEFENDANT'S ANSWER TO OMEGA PATENTS, LLC'S COMPLAINT

Defendant BMW of North America, LLC ("Defendant" or "BMWNA") hereby submits the following Answer to the Complaint filed by Omega Patents, LLC ("Omega"). Unless expressly admitted, the allegations in the Complaint are denied.

## THE PARTIES,[1] JURISDICTION AND VENUE

**1.     Plaintiff Omega Patents, LLC ("Omega") is a Georgia limited liability company.**

**ANSWER:** BMWNA is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint, and

---

[1] The headings from the Complaint are incorporated for placement purposes only and are not intended to be statements or admissions by BMWNA.

therefore, denies the allegations of Paragraph 1.

   2.    **Upon information and belief, Defendant Bayerische Motoren Werke AG ("BMWAG") is a German automotive corporation with a place of business at Petuelring 130, BMW Haus, Munich, 80788, Germany. On information and belief, BMWAG does business itself, or through its subsidiaries and affiliates, in the State of Georgia and the Northern District of Georgia.**

**ANSWER:** BMWNA admits that Bayerische Motoren Werke AG ("BMWAG") is

a German automotive corporation with a place of business at Petuelring 130,

BMW Haus, Munich, 80788, Germany. The remaining allegations in Paragraph 2

constitute legal conclusions that require no response, but to the extent a response is

required BMWNA denies the allegations of Paragraph 2.

   3.    **Upon information and belief, Defendant BMW of North America, LLC ("BMWNA") is a Delaware corporation with a place of business at 300 Chestnut Ridge Road, Woodcliff Lake, NJ 07675. Upon information and belief, BMWNA is the exclusive importer and distributor of BMW and MINI branded vehicles. BMWNA acquires these vehicles from BMWAG, imports them into the United States, and distributes them through BMW dealers throughout the United States. Upon information and belief, BMW also maintains a Vehicle Distribution Center in Brunswick, Georgia.**

**ANSWER:** BMWNA admits that it is a Delaware limited liability company, with a

place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677,

and imports and distributes BMW and MINI-branded automobiles. BMWNA

further admits that non-party BMW dealers distribute BMW and MINI branded

vehicles. BMWNA further admits that it maintains a Vehicle Distribution Center in

2

Brunswick, Georgia, but denies that Brunswick, GA, is within this judicial district.

The remaining allegations in Paragraph 3 constitute legal conclusions that require

no response, but to the extent a response is required BMWNA denies the

allegations of Paragraph 3.

> **4.      Based on records maintained by the Georgia Secretary of State, BMWNA is registered to do business in Georgia with the Secretary of State and has a Registered Agent for service of process in this District: CT Corporation System, 289 S Culver St, Lawrenceville, GA, 30046. Upon information and belief, BMWNA engages in sales of products that infringe the patent-in-suit exclusively through BMW dealerships, five of which are in the Northern District of Georgia. Specifically, BMW dealerships in this district include BMW of South Atlanta, Nalley BMW of Decatur, BMW of Gwinnett Place, Global Imports BMW, and United BMW. Upon information and belief, BMWNA engages in marketing activities that promote the sale of BMW-branded products to customers and/or potential customers located in Georgia and in the Northern District of Georgia. BMWNA promotes each of these locations as its place of business in the Northern District of Georgia on the BMWNA website.**

**ANSWER:** BMWNA admits that it is registered to do business in Georgia with the

Secretary of State and has a Registered Agent for service of process in this District:

CT Corporation System, 289 S Culver St, Lawrenceville, GA, 30046. BMWNA

admits that it engages in marketing activities for BMW-brand vehicles in a

nationwide marketing campaign throughout the United States. However,

BMWNA's distribution, marketing, and support activities are consistent

throughout the country and BMWNA does not have any unique contacts with

Georgia or this district, as compared to any other state in which any independent

BMW or MINI dealers are located. BMWNA denies that it promotes independent

dealerships as its own places of business on its website. Further, BMWNA and the

independent dealerships are completely separate corporate entities that observe all

corporate formalities. The remaining allegations in Paragraph 4 constitute legal

conclusions that require no response, but to the extent a response is required

BMWNA denies the allegations of Paragraph 4. BMWNA specifically denies any

alleged infringement.

> **5.     In particular, one or more Defendants regularly engage in marketing activities that promote the sale of BMW-branded products to customers and/or potential customers located in Georgia and in the judicial Northern District of Georgia. Upon information and belief, Defendants maintain interactive commercial websites, accessible to residents of Georgia and the Northern District of Georgia, through which Defendants promote and offer products for sale that infringe the patent-in-suit in Georgia.**

**ANSWER:** BMWNA admits that it engages in marketing activities for BMW-

brand vehicles in a nationwide marketing campaign throughout the United States.

However, BMWNA's distribution, marketing, and support activities are consistent

throughout the country and BMWNA does not have any unique contacts with

Georgia or this district, as compared to any other state in which any independent

BMW or MINI dealers are located. BMWNA further admits that maintains a

website accessible to the public, but BMWNA denies that it sells any products to

customers in Georgia on its website. The remaining allegations in Paragraph 5

constitute legal conclusions that require no response, but to the extent a response is required BMWNA denies the allegations of Paragraph 5. BMWNA specifically denies any alleged infringement.

6. **Upon information and belief, these interactive commercial websites direct customers as to where to buy BMW-branded vehicles with accused products, including the BMW dealerships within the Northern District of Georgia. Defendants' interactive commercial websites have submission forms that allow customers to view inventory at the dealers in this District and submit vehicle customization choices to a local "BMW Center" for information and to purchase Defendants' vehicles. Defendants' interactive websites also provide service and care information, and materials about Defendants' products. Upon information and belief, Defendants offer to sell their branded vehicles within the District, which include the infringing products, by causing advertisements for their vehicles to appear on internet, television and radio programs broadcast into the District and in local newspapers distributed within the District.**

**ANSWER:**  BMWNA admits it has a website accessible to the public. BMWNA further admits that it engages in marketing activities for BMW-brand vehicles in a nationwide marketing campaign throughout the United States. However, BMWNA's distribution, marketing, and support activities are consistent throughout the country and BMWNA does not have any unique contacts with Georgia or this district, as compared to any other state in which any independent BMW or MINI dealers are located. The remaining allegations in Paragraph 6 constitute legal conclusions that require no response, but to the extent a response is required BMWNA denies the allegations of Paragraph 6. BMWNA specifically

denies any alleged infringement.

   7.   **Upon information and belief, the BMW dealers located within the Northern District of Georgia have executed dealer agreements with BMWNA. Upon information and belief, these dealer agreements set forth standards and requirements enumerated by Defendants that dealers are required to comply with for both sales and service. Upon information and belief, BMWNA regularly, continuously, and systematically provides support to and control over the BMW dealerships located in the Northern District of Georgia.**

**ANSWER:** BMWNA specifically denies that it regularly, continuously, and systematically provides support to and control over BMW dealerships located in the Northern District of Georgia. BMWNA admits that it has entered into agreements with independent dealerships in this District. However, BMWNA and the independent dealerships are completely separate corporate entities that observe all corporate formalities. The remaining allegations in Paragraph 7 constitute legal conclusions that require no response, but to the extent a response is required BMWNA denies the allegations of Paragraph 7.

   8.   **Upon information and belief, through its exclusive agents, dealers and representatives, BMWNA provides new car warranty service within the district on the infringing products. Upon information and belief, BMWNA warrants to the original and each subsequent owner of new BMW vehicles that any authorized BMW dealer will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period. Upon information and belief, all such warranty work is paid for by BMWNA, and questions/notifications regarding the warranty are made directly to BMWNA. Upon information and belief, there are at least five authorized dealers in the Northern District of Georgia where service is performed under the BMWNA new vehicle warranty, at the service departments at BMW of South**

> **Atlanta, Nalley BMW of Decatur, BMW of Gwinnett Place, Global Imports BMW, and United BMW. Upon information and belief, service technicians employed at these dealerships participate in BMWNA-sponsored training programs, schools, and events.**

**ANSWER:** BMWNA admits that it there are independent dealerships in this District. However, BMWNA and the independent dealerships are completely separate corporate entities that observe all corporate formalities. The remaining allegations in Paragraph 8 constitute legal conclusions that require no response, but to the extent a response is required BMWNA denies the allegations of Paragraph 8.

> **9.    This Court has jurisdiction over the subject matter of this action as to the Defendants pursuant to 28 U.S.C. §§ 1331 and 1338(a).**

**ANSWER:** The allegation of jurisdiction in Paragraph 9 constitutes a legal conclusion that requires no response. To the extent a response is required, BMWNA admits that Plaintiff purports to state a civil claim arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, but BMW specifically denies any alleged infringement.

> **10.    This Court has *in personam* jurisdiction as to Defendants because, upon information and belief, Defendants are subject to both general and specific jurisdiction in this State. More particularly, upon information and belief, Defendant regularly conducts business activity in the State of Georgia and sells and offers to sell products that infringe one or more claims of Omega's patent in this Judicial District.**

**ANSWER:** The allegations in Paragraph 10 constitute legal conclusions that require no response. To the extent a response is required, BMWNA does not contest that this Court has personal jurisdiction over it for the purposes of this

action only, but denies that this is the most appropriate or convenient forum to

exercise jurisdiction over BMWNA in this case.

> **11.** **Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(c)(3) (as to BMW AG) and 1400(b) (as to BMWNA) because, among other things, Defendants are subject to personal jurisdiction in this judicial district, Defendants have a regular and established place of business in Georgia and in this judicial district, and Defendants have purposely transacted business involving the accused products in this judicial district, including sales to one or more customers in Georgia, and certain of the acts complained of herein occurred in this judicial district.**

**ANSWER:** The allegation in Paragraph 11 constitutes a legal conclusion that

requires no response. To the extent a response is deemed required, BMWNA

denies the allegations stated in Omega's complaint sufficiently plead appropriate

venue under 28 U.S.C. § 1400(b). BMWNA further denies that this judicial district

is a convenient forum. BMW denies each of the remaining allegations of Paragraph

11. BMWNA incorporates by reference its Third Affirmative Defense, Failure to

Plead Venue, and its Motion to Dismiss for Improper Venue (D.I. 43).

## STATEMENT OF FACTS

> **12.** **On October 4, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,458,814 B2 ("the '814 Patent"). Omega is the sole and exclusive owner of the valid and enforceable '814 Patent, a copy of which is attached hereto as Exhibit A.**

**ANSWER:** BMWNA denies that the '814 patent was lawfully issued.

Nevertheless, BMWNA admits that the issue date on the face of the '814 patent, as

indicated by a copy of the '814 patent obtained from the USPTO's website, is

October 4, 2016, and that the patent is entitled "Remote Start Control System for a Vehicle with a Bus Controllable Brake and Associated Methods."

> **13.   Kenneth E. Flick, the inventor of the Patents-in-Suit, is recognized as an innovator in the vehicle electronics industry, having invented many improvements for the vehicle electronics and security industry, including innovations covering remote start systems and the vehicle data bus.**

**ANSWER:** BMWNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and therefore denies the allegations of Paragraph 13.

> **14.   The '814 Patent reflects some of Mr. Flick's inventions in the field. Mr. Flick has assigned all of his rights to the inventions claimed in the '814 Patent to Omega, which has owned them since the date of issuance and during the alleged infringement of the Defendants.**

**ANSWER:** BMWNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and therefore denies the allegations of Paragraph 14. BMWNA specifically denies any alleged infringement.

> **15.   Upon information and belief, Defendants manufacture, import, offer for sale and/or sell vehicles in the United States and in this Judicial District that directly or indirectly infringe upon one or more claims of the '814 Patent. Specifically, Defendants' vehicles can be equipped with remote engine start systems that each infringe at least Claim 1 of each of the '814 Patent.**

**ANSWER:** The allegations in Paragraph 15 constitute legal conclusions that require no response, but to the extent a response is required BMWNA denies the allegations of Paragraph 15. BMWNA specifically denies any alleged

infringement.

16.    **Defendants promote the operation of remote start systems on Defendants' official YouTube channel, including on videos such as located at https://www.youtube.com/watch?v=o4VlAsPg-Q0. Additionally, Defendants' provide owners' manuals with their vehicles that describes the remote engine start systems:**



> # Stationary climate control through Remote Engine Start
>
> ## Concept
>
> Stationary climate control cools or heats the car's interior prior to departure to a comfortable temperature. The system automatically cools, vents, and heats depending on the interior, external, and set temperature. Snow and ice may be removed more easily.
>
> The system starts the engine automatically and allows it to run for a limited period of time.

**ANSWER:** BMWNA admits that it has a YouTube channel and provides owners' manuals for BMW-branded automobiles, both of which reference a remote engine start system. The remaining allegations in Paragraph 16 constitute legal conclusions that require no response, but to the extent a response is required BMWNA denies the allegations of Paragraph 16. BMWNA specifically denies any alleged infringement.

17.    **In February 2020, Omega notified Defendants of their infringement of the '814 Patent in certain models, including at least**

the X5 and X7 models. Omega has not granted Defendants a license
to practice the '814 Patents.

**ANSWER:** BMWNA admits that Omega sent a letter to BMWNA dated February

7, 2020. BMWNA denies that the February 7, 2020 letter provided sufficient notice

of any alleged infringement of the '814 patent. The remaining allegations of

Paragraph 17 constitute legal conclusions that require no response. To the extent a

response is required, BMWNA denies the remaining allegations of Paragraph 17.

BMWNA specifically denies any alleged infringement.

18.     **The below chart shows Defendants and their customers infringing
at least Claim 1 of the '814 Patent:**

| U.S. PATENT 9,458,814 | |
|---|---|
| OMEGA PATENT CLAIM | REMOTE ENGINE START SYSTEM-BMW X Series |
| 1. A remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, | The BMW Remote Engine Start System in at least the BMW X-Series is a remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus.<br><br> |

| U.S. PATENT 9,458,814 ||
| :---: | :---: |
| OMEGA PATENT CLAIM | REMOTE ENGINE START SYSTEM-BMW X Series |
| the remote start control system comprising: | |
| |  |
| a remote start transmitter remote from the vehicle and configured to generate a remote start signal; and | The BMW Remote Engine Start System in at least the BMW X-Series includes a remote start transmitter remote from the vehicle and configured to generate a remote start signal, as depicted below. The system is also operable with the user's cellular phone.  |

| U.S. PATENT 9,458,814 | |
|---|---|
| OMEGA PATENT CLAIM | REMOTE ENGINE START SYSTEM-BMW X Series |
| |  |
| a vehicle remote start controller at the vehicle and comprising | The BMW Remote Engine Start System in at least the BMW X-Series includes a vehicle remote start controller at the vehicle. |
| a receiver configured to receive the remote start signal from said remote start transmitter, and | The BMW Remote Engine Start System in at least the BMW X-Series includes a receiver configured to receive the remote start signal from said remote start transmitter. |
| at least one processor cooperating with said receiver and configured to, in response to the remote start signal, | The BMW Remote Engine Start System in at least the BMW X-Series includes at least one processor cooperating with said receiver and configured to, in response to the remote start signal. |
| generate the parking brake command on the data communications bus to operate the at least one vehicle brake, | The BMW Remote Engine Start System in at least the BMW X-Series generates the parking brake command on the data communications bus to operate the at least one vehicle brake. |

| **U.S. PATENT 9,458,814** | |
|---|---|
| OMEGA PATENT CLAIM | REMOTE ENGINE START SYSTEM-BMW X Series |
| generate the climate control command on the data communications bus to operate the climate control system, and | The BMW Remote Engine Start System in at least the BMW X-Series generates the climate control command on the data communications bus to operate the climate control system. |
| start the engine. | The BMW Remote Engine Start System in at least the BMW X-Series starts the engine. |

**ANSWER:** BMWNA denies that the claim chart in Paragraph 18 shows infringement by it or its customers, and BMWNA specifically denies any alleged infringement. Further, Omega fails to provide sufficient specificity with respect to the allegations that the BMW X-Series has the various technical features alleged, and BMWNA is thus without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18.

19.   **In light of the prior notice of infringement by Omega, Defendants are also liable for the infringement of the '814 Patent by their customers, as Defendants actively induced and contributed to acts of their customers they knew were infringing or were willfully blind to the infringing nature of the acts by virtue of enabling such acts through use of remote transmitters (e.g. cellular phones) owned by the customers.**

**ANSWER:** BMWNA admits that Omega sent a letter to BMWNA dated February 7, 2020. BMWNA denies that the February 7, 2020 letter provided sufficient notice of any alleged infringement of the '814 patent.  BMWNA specifically denies that it and its customers infringe the '814 patent. BMWNA further denies that it has

actively induced or contributed to any infringement from its customers. The

remaining allegations of Paragraph 19 constitute legal conclusions that require no

response. To the extent a response is required, BMWNA denies the remaining

allegations of Paragraph 19.

## <u>COUNT I</u>
### <u>Action for [Alleged] Direct Infringement of the '814 Patent</u>

**20.     Count I is an action by Omega against Defendants for monetary
damages and injunctive relief for Defendants' direct infringement
of the '814 Patent.**

<u>**ANSWER:**</u> The allegations of Paragraph 20 constitute legal conclusions that

require no response.

**21.     Omega herein restates and reincorporates into this Count the
allegations of Paragraphs 1 through 19 herein.**

<u>**ANSWER:**</u> BMWNA repeats all responses contained in the preceding and

following Paragraphs as though fully set forth herein.

**22.     Upon information and belief, Defendants manufacture, import,
offer for sale and/or sell vehicles in the United States and in this
Judicial District with remote engine start systems, including at least
BMW X-Series vehicles, that directly infringe one or more claims
of the '814 Patent in the United States and in this Judicial District.**

<u>**ANSWER:**</u> The allegations in Paragraph 22 constitute legal conclusions that

require no response, but to the extent a response is required BMWNA denies the

allegations of Paragraph 22. BMWNA specifically denies any alleged

infringement.

**23.     Omega is entitled to compensatory damages and injunctive relief**

for Defendants' infringing activities and any ongoing sales thereafter.

**ANSWER:** BMWNA denies the allegations in Paragraph 23.

24.     Upon information and belief, Defendants lack justifiable belief that there is no infringement or that the infringed claims are invalid and has acted with objective recklessness in its infringing activity. Defendants' infringement is therefore willful, and Omega is entitled to an award of exemplary damages, attorneys' fees, and costs in bringing this action.

**ANSWER:** BMWNA denies the allegations in Paragraph 24.

### COUNT II
### Action for [Alleged] Induced Infringement of the '814 Patent

25.     Count II is an action by Omega against Defendants for monetary damages and injunctive relief for Defendants' indirect infringement of the '814 Patent.

**ANSWER:** The allegations of Paragraph 25 constitute legal conclusions that

require no response.

26.     Omega herein restates and reincorporates into this Count the allegations of Paragraphs 1 through 19 herein.

**ANSWER:** BMWNA repeats all responses contained in the preceding and

following Paragraphs as though fully set forth herein.

27.     Plaintiff put Defendant on notice of its infringement of one or more of the claims of the '814 Patent at least as early as February 2020, yet Defendants continue to sell vehicles with remote engine start systems, including at least BMW X-Series, to customers.

**ANSWER:** BMWNA admits that Omega sent a letter to BMWNA dated February

7, 2020. BMWNA denies that the February 7, 2020 letter provided sufficient notice

of any alleged infringement of the '814 patent. The remaining allegations of Paragraph 27 constitute legal conclusions that require no response. To the extent a response is required, BMWNA denies the remaining allegations of Paragraph 27. BMWNA specifically denies any alleged infringement.

**28.     Defendants knew, or were willfully blind to, the existence of the '814 Patent and that the acts they induced constitute infringement by manufacturing, importing, offering for sale and/or selling vehicles with remote engine start systems that infringe the '814 Patent, including at least BMW X-Series, to customers.**

**ANSWER:** BMWNA denies the allegations in Paragraph 28.

**29.     With knowledge of, or a willful blindness to, the '814 Patent, Defendants encouraged their customers to infringe the '814 Patents through use of the remote engine start systems in Defendants' vehicles.**

**ANSWER:** BMWNA denies the allegations in Paragraph 29.

**30.     Defendants' customers directly infringe the '814 Patent by using the remote engine start systems in Defendants' vehicles as encouraged and instructed by Defendants.**

**ANSWER:** BMWNA denies the allegations in Paragraph 30.

**31.     Plaintiff is entitled to compensatory damages and injunctive relief for Defendants' infringing activities and any ongoing sales thereafter.**

**ANSWER:** BMWNA denies the allegations in Paragraph 31.

**32.     Plaintiff has suffered damages as a result of Defendants' induced infringement.**

**ANSWER:** BMWNA denies the allegations in Paragraph 32.

**COUNT III**

**Action for [Alleged] Contributory Infringement of the '814 Patent**

33.   Count III is an action by Omega against Defendants for monetary damages and injunctive relief for Defendants' indirect infringement of the '814 Patent.

**ANSWER:** The allegations of Paragraph 33 constitute legal conclusions that require no response.

34.   Omega herein restates and reincorporates into this Count the allegations of Paragraphs 1 through 19 herein.

**ANSWER:** BMWNA repeats all responses contained in the preceding and following Paragraphs as though fully set forth herein.

35.   Omega put Defendants on notice of their infringement of one or more of the claims of the '814 Patent at least as early as February 2020, yet Defendants continue to sell vehicles with remote engine start systems, including at least BMW X-Series, to customers.

**ANSWER:** BMWNA admits that Omega sent a letter to BMWNA dated February 7, 2020. BMWNA denies that the February 7, 2020 letter provided sufficient notice of any alleged infringement of the '814 patent. The remaining allegations of Paragraph 35 constitute legal conclusions that require no response. To the extent a response is required, BMWNA denies the remaining allegations of Paragraph 35. BMWNA specifically denies any alleged infringement.

36.   Defendants knew, or were willfully blind to, the existence of the '814 Patent and that their provision of a component that is a material part of the '814 Patent especially made or adapted for use in an infringing system constitutes contributory infringement.

**ANSWER:** BMWNA denies the allegations in Paragraph 36.

18

37.   **Defendants are manufacturing, importing, offering for sale and/or selling vehicles with remote engine start systems that infringe the '814 Patent, including at least in at least the BMW X-Series, to customers.**

**ANSWER:** BMWNA denies the allegations in Paragraph 37.

38.   **The remote engine start systems in at least the current BMW X-Series have no substantial, non-infringing use.**

**ANSWER:** BMWNA denies the allegations in Paragraph 38.

39.   **Defendants' customers have directly infringed the '814 Patent.**

**ANSWER:** BMWNA denies the allegations in Paragraph 39.

40.   **Plaintiff is entitled to compensatory damages and injunctive relief for Defendants' and their customers' infringing activities and any ongoing sales thereafter.**

**ANSWER:** BMWNA denies the allegations in Paragraph 40.

41.   **Plaintiff has suffered damages as a result of Defendants' contributory infringement.**

**ANSWER:** BMWNA denies the allegations in Paragraph 41.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following must necessarily be plead as an affirmative defense, or that any of the following is not already at issue by virtue of the foregoing denials, and without prejudice to BMWNA's rights to plead additional defenses as discovery into the facts of the matter warrants, BMWNA asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
### (Noninfringement)

Omega is not entitled to any relief against BMWNA because BMWNA has not infringed, is not infringing directly, indirectly, by inducement of infringement or contributory infringement, or in any way (either literally or under the doctrine of equivalents), any valid and enforceable claims of the '814 patents.

## SECOND AFFIRMATIVE DEFENSE
### (Invalidity)

The '814 patent is invalid for failure to satisfy one or more of the conditions of patentability set in Title 35 of the United States Code, 35 U.S.C. §§ 100, et seq., including, but not limited to, §§ 101, 102, 103, and 112.

## THIRD AFFIRMATIVE DEFENSE
### (Failure to Plead Venue)

Omega failed to adequately plead venue. All Omega's venue-related allegations concern independent dealers of BMW vehicles—non-parties who are separate and distinct entities from BMWNA. This cannot establish venue. BMWNA offered Omega the opportunity to file an amended complaint to fix this fundamental deficiency, but Omega refused, forcing BMWNA to file a Motion to Dismiss the Complaint for Improper Venue (D.I. 43).

After the Supreme Court's sea-changing decision regarding patent venue in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), and the Federal Circuit's subsequent interpretations of the patent-venue statute in *In re Cray*, 871 F.3d 1355 (Fed. Cir. 2017) and *In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed.

Cir. 2018), the law is clear it is plaintiff's burden to establish that venue is appropriate where a domestic defendant is incorporated or "where the defendant has committed acts of infringement and has regular and established place of business." 28 U.S.C. § 1400(b). Since BMWNA is incorporated in Delaware, Omega must establish that BMWNA has a "regular and established place of business" in this jurisdiction. It has not.

The only soil in the Northern District of Georgia that Omega points to as establishing venue over BMWNA is owned and controlled by non-party dealerships. The sheer tonnage of caselaw states that such non-parties cannot be the venue-anchoring places of a defendant. By hinging its venue allegations solely on the places of non-parties—in other words, places *not* of BMWNA—Omega failed to meet its burden of establishing venue.[2]

<u>Omega's Allegations in its Complaint</u>

---

[2] Post-*TC Heartland*, this is the at least third time BMWNA has been accused of patent infringement in a jurisdiction where the venue allegations were based on dealership locations.  The Southern District of California, consistent with every other court (save one) that has confronted the issue of whether separate corporate entities can form the basis of venue, found venue **inappropriate**.  *West View Res., LLC v. BMW of North Am., LLC*, Case No. 16-CV-2590-JLS (AGS), 2018 WL 4367378 (S.D. Cal. Feb. 5, 2018).  Only one judge from the Eastern District of Texas (Judge Gilstrap) has found otherwise, but ultimately vacated the decision on venue as to BMWNA.. *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, C.A. No. 2:17-cv-418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018) (finding dealership-based venue); 2019 WL 3494359 (E.D. Tex. Aug. 1, 2019) (granting motion to vacate venue decision).

Omega accuses BMWNA of infringing the '814 patent by selling certain vehicles with particular remote engine start systems. *See* D.I. 1 at ¶¶ 12–41. The Complaint contains only seven paragraphs with allegations about BMWNA as they pertain to venue, and none relate to a place of business of BMWNA in the Northern District of Georgia. *See* D.I. 1 at ¶¶ 3–8, 11. Thus, none of Omega's factual allegations, even if true, can establish venue over BMWNA.

BMWNA is a Delaware company. It is not incorporated in Georgia, and thus does not "reside" here for the purposes of patent venue.[3] Omega also correctly states that certain BMW- and MINI- branded vehicles are distributed through non-parties ("BMW dealers")—and not BMWNA. D.I. 1 at ¶ 3. Omega further alleges that "BMW" (without specifying which BMW-entity) "maintains a Vehicle Distribution Center in Brunswick, Georgia." D.I. 1 at ¶ 3. Brunswick, Georgia is in the Southern District of Georgia, not this district.[4]

In the next paragraph, Omega correctly observes that BMWNA is registered to "do business" in Georgia, maintains a "Registered Agent for service of process in the District," and cites an address for non-party CT Corporation System. D.I. 1 at ¶ 4. Omega admits, however, that BMWNA does not sell any vehicles to customers

---

[3] *TC Heartland*, 137 S. Ct. at 1517 ("We therefore hold that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute.").

[4] Brunswick, Georgia is in the Southern District of Georgia. https://www.gasd.uscourts.gov/court-info/court-locations.

in this district; instead, vehicle sales occur "exclusively" through non-parties[5]—
BMW dealerships—and lists five of these non-parties: (1) BMW of South Atlanta,
(2) Nalley BMW of Decatur, (3) BMW of Gwinnett Place, (4) Global Imports BMW,
and (5) United BMW. *Id.* Unable to allege that BMWNA sells vehicles here, Omega
next vaguely claims that "[u]pon information and belief" "BMWNA engages in
marketing activities" that promote BMW sales in Georgia and the Northern District
of Georgia, without specifically claiming *where* such alleged "marketing activities"
occur. *Id.* Finally, without evidence, Omega incorrectly speculates that "BMWNA
promotes each of these locations as its place of business in the Northern District of
Georgia on the BMWNA website. *Id.* BMWNA does not promote dealerships as its
own places of business. *See, e.g.*, https://www.bmwusa.com/privacy-
policy/index.html (identifying dealers as "non-affiliated companies that market our
products and services such as our authorized BMW dealers who are distinct entities
and have their own privacy policies").

In Paragraph 5 of the Complaint, Omega alleges that "one or more
Defendants" (without specifying whether this refers to BMWNA) engage in
"marketing activities that promote the sale of BMW-branded products to customers
and/or potential customers located in Georgia and in the judicial Northern District

---

[5] Omega also incorrectly alleges that "BMWNA engages in sales of products that
infringe the patent-in-suit . . ." D.I. 1 at ¶ 4. To be clear, BMWNA does not
infringe the patent-in-suit.

of Georgia." D.I. 1 at ¶ 5. Again, Omega does not specify any physical location in this district, let alone a physical location *of BMWNA*, where such activities allegedly take place. Instead, Omega only alleges that "Defendants" (again without specifying whether this includes BMWNA) "maintain interactive commercial websites, accessible to residents of Georgia and the Northern District of Georgia, through which Defendants promote and offer products for sale[.]" *Id.*[6]. BMWNA does not sell any products to customers in Georgia on its website, and websites are not physical places.

Indeed, in Paragraph 6 of the Complaint, Omega admits that BMWNA's website directs customers to non-party locations in the district to buy BMW-branded vehicles. D.I. 1 at ¶ 6. ("Upon information and belief, these interactive commercial websites direct customers as to where to buy BMW-branded vehicles with accused products, including **the BMW dealerships** within the Northern District of Georgia."). Omega further describes certain features allegedly available on "Defendants'" websites, like viewing inventory and submission of customization choices to the non-party dealers. *Id.* Omega generically avers that the websites provide "service and care information, and materials about Defendants' products." *Id.* Again, however, Omega admits that "Defendants" market via **non-parties** "by

---

[6] Again, Omega incorrectly states that "Defendants promote and offer products for sale that infringe the patents-in-suit in Georgia." D.I. 1 at ¶ 5. BMWNA does not infringe the patent-in-suit.

causing advertisements for their vehicles to appear on the internet, television and radio programs broadcast into the District and in local newspapers distributed within the District." *Id.* Omega does not allege that any of this marketing activity occurs at a physical location of BMWNA in this district.

Paragraph 7 of the Complaint notes that the non-party dealers sign agreements with BMWNA. D.I. 1 at ¶ 7. Like any arms-length business relationship, the Complaint alleges that the agreements cover certain obligations. *Id.* ("Upon information and belief, these dealer agreements set forth standards and requirements enumerated by Defendants that dealers are required to comply with for both sales and service."). Citing only "information and belief," Omega incorrectly alleges that BMWNA "regularly, continuously, and systematically provides support to and control over the BMW dealerships located in the Northern District of Georgia." *Id.* But even if this were true, Omega does not allege that the independent dealerships are owned by BMWNA.

Paragraph 8, the final paragraph purporting to allege facts that support venue over BMWNA, points again only to the non-party dealerships' locations in the District. Specifically, Omega alleges that BMWNA provides a warranty for new cars and pays for warranty work, provided that the work is performed at non-party "authorized dealers." D.I. 1 at ¶ 8. Omega admits that the service technicians that perform the work are not employees of BMWNA, but rather are "employed at these

dealerships," and receive certain BMWNA-sponsored training. *Id.*

Despite admitting that BMWNA is not incorporated in Georgia, has arms-length contractual relationships with non-party dealerships in the District who are separate and distinct corporate entities from BMWNA, vehicle sales occur "exclusively" at these non-party dealerships, and that the non-party dealerships are the ones that employ service technicians to perform warranty work, Omega somehow concludes that venue is appropriate via 28 U.S.C § 1400(b) because allegedly "Defendants have a regular and established place of business in Georgia and in this judicial district." D.I. 1 at ¶ 11. Omega has not sufficiently plead this.

BMWNA informed counsel for Omega that the Complaint was insufficient as to venue, and likely reflected a lack of pre-suit investigative diligence. Ex. 1 (correspondence between BMWNA and Omega's counsel). BMWNA offered to forgo filing this motion to dismiss if Omega agreed to file an amended complaint that removed the dealerships as a basis for venue. *Id.* Omega refused, citing concerns that an amended complaint would require more work for them to complete service on German **BMWAG** (not BMWNA) via the Hague. Specifically, Omega was concerned that an "amendment would likely require Omega to translate the amended complaint and restart the service process," a problem that was caused by Omega's own failure to adequately plead venue in the first instance. Accordingly, BMWNA seeks dismissal of the Complaint, and seeks its costs and fees for briefing this

motion.

Patent Venue Is Specific and Is Omega's Burden to Show

"[T]he Supreme Court has cautioned against a broad reading of the venue statute." *In re Google LLC*, 949 F.3d 1338, 1346–47 (Fed. Cir. 2020) (citing *In re Cray*, 871 F.3d at 1361; *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942)). "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) (citation omitted). The patent venue statute provides that venue is appropriate either (1) "where defendant resides" or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." § 1400(b). It is plaintiff's burden to show that venue is appropriate. *In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018).

Omega's Complaint is factually devoid of allegations that could make out a case as to venue for BMWNA. *See In re Cray*, 871 F.3d 1355, 1367 (Fed. Cir. 2017) (directing district court to grant motion to dismiss under 12(b)(3) due to lack of venue). Further, venue and jurisdiction must be appropriate as to each defendant. *AGIS Software Dev., LLC v. ZTE Corp.*, Case No. 2:17-cv-517-JRG, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 25, 2018) (citing *Magnacoustics, Inc. v. Resonance Tech. Co.*, 132 F.3d 49 (Fed. Cir. 1997)).

<u>First Prong of the Venue Statute - BMWNA Does Not "Reside" in Georgia</u>

Under the first prong of § 1400(b), a domestic corporate defendant "resides" **only** where it is incorporated. *TC Heartland*, 137 S. Ct. at 1517 ("We therefore hold that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."). BMWNA is incorporated in Delaware, thus does not reside in Georgia, and accordingly, there is no dispute that Omega cannot establish venue under this prong.

<u>Second Prong of the Venue Statute - Omega Failed to Show BMWNA Has a "Regular and Established Place of Business" in the Northern District of Georgia</u>

Under the second prong of § 1400(b), Omega must plead facts sufficient to show that venue is appropriate where "the defendant has committed acts of infringement and has a regular and established place of business." § 1400(b).[7] Not any place in the district can qualify, rather, there are three requirements relevant to the inquiry: "(1) there must a physical place in the district; (2) it must be a regular and established place of business; (3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

---

[7] While Omega's Complaint accuses BMWNA of infringement of the '814 patent, *see* D.I. 1 at ¶¶ 12–41, BMWNA expressly denies that it infringes the '814 patent, which is yet another reason why venue is improper. *See Southern Visions, LLP v. Red Diamond, Inc.*, Case No. 1:18-cv-4566-ELR, 2018 WL 8221528, at *4 (N.D. Ga. Dec. 10, 2018) (finding venue inappropriate because plaintiff could not establish infringing product was ever located in the district).

*The only physical places Omega points to in the Complaint are of non-parties.*

As to the first two requirements that (1) there is a physical place in the district and (2) it must be a regular and established place of business, Omega points **only** to non-parties: the office of BMWNA's registered agent CT Corporation and the dealerships in this district.[8] D.I. 1 at ¶ 3–8. Thus, the only question remaining is whether these non-parties are "place[s] of" BMWNA. They are not.

*Every Court has held that absent collapsing the corporate form, non-party locations do not qualify as venue-establishing places of business of a defendant.*

The only physical places Omega points to in the Complaint are a non-party registered agent and the non-party dealerships. Neither are "place[s] of" BMWNA.

*Registered agents do not create venue.*

The address of BMWNA's registered agent, CT Corporation, cannot establish venue. D.I. 1 at ¶ 4. Courts have already determined that the location of a registered agent is irrelevant to determine venue under § 1400(b), and that "[c]onsideration of the appointed agent is especially inappropriate because the patent venue statute was

---

[8] To the extent Omega attempts to rely on the Vehicle Distribution Center, in Brunswick, Georgia, that location is not "in the district" and therefore does not qualify as establishing venue in the Northern District of Georgia. *Cf. In re BigCommerce, Inc.*, 890 F.3d 978, 986 (Fed. Cir. 2018) (holding for the purposes of § 1400(b), in a state having multiple judicial districts, a corporate defendant resides only in the single judicial district where it maintains a principal place of business, or, failing that, the judicial district in which its registered office is located).

29

intended to eliminate the abuses engendered by subjecting defendants to suit wherever they could be served." *See, e.g.*, *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 931 (E.D. Va. 2017) ("Symbology also observes that Lego Systems is registered as a foreign corporation with the Commonwealth of Virginia, and has appointed a registered agent to accept service of process in Virginia. These facts fail to support a finding that venue is proper under § 1400(b). Neither fact has any bearing on whether Lego Systems maintains a physical place within the District.") (citations omitted); *NetSoc, LLC v. Chegg Inc.*, Case No. No. 18-CV-10262 (RA), 2019 WL 4857340, at *3 (S.D.N.Y. Oct. 2, 2019) ("Similarly, the fact that Quora has a registered agent for service of process located in New York has no bearing on whether Quora maintains a physical place in the district upon which venue could be predicated.") (citing *In re Cray*, 871 F.3d at 1362–63).

*Non-party dealerships do not create venue.*

Courts (including the Federal Circuit) have, over and over again, confronted the question of whether the physical presence of corporate entities independent and distinct from the defendant, such as distributors, dealers, sellers, service providers, and the like, meet the statutory requirements for venue. Omega does not allege that the corporate separateness between BMWNA and the independent dealerships is a sham that would justify collapsing the corporate forms. And, consistently, courts do not impute the location of one corporate entity to another for venue purposes, if the

entities maintain formal separateness as BMWNA and the dealerships do here. For the purposes of venue, the law is definite that,"[s]o long as a formal separation of [closely related] entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other." *EMED Techs. Corp. v. Repro-med Sys., Inc.*, C.A. No. 2:17-cv-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (citing Wright & Miller, Fed. Prac. & Proc. Juris. § 3823 (4th ed.)) (Bryson, J., sitting by designation from the Federal Circuit); *see also National Steel Car Ltd. v. Greenbrier Co., Inc.*, Civil Action No. 6:19-cv-00721-ADA (W.D. Tex. July 27, 2020) (finding subsidiary's place of business did not establish venue, holding that in "order to not dismiss this case, the Court must find the line between [defendant] and its subsidiaries have so blurred that the two become one" and the presumption of institutional independence of related corporate entities may be rebutted only by "clear evidence"). And there is abundant case law from courts holding that a distributor's place of business cannot establish venue for its supplier. *EMED Techs* 2018 WL 2544564, at *2 (listing more than a dozen cases from various districts reaching the same conclusion, including *E-System Design, Inc. v. Mentor Graphics Corp.*, Case No. 1:17-cv-1127-TCB, 2017 WL 8288122, at * (N.D. Ga. Nov. 13, 2017), which noted it was incorrect, post-*Cray*, to argue that different business divisions can suffice as a "regular and established place of business" for each other.

Even specifically as to BMWNA, another court has already thoroughly examined, and rejected, a theory of venue based on in-district dealerships. In *West-View Research*, the court rejected the theory that dealerships created venue, because that argument "ignore[d] the difference between separate and distinct corporate entities." 2018 WL 4367378 at *7. That court expressly held that there was no basis to pierce the corporate veil separating BMWNA and the dealerships, which would be the only basis to find venue. *Id.* at *8 ("Plaintiff's theory is predicated on the Defendants' operating agreement with the BMW and MINI dealerships exerting such control that the dealerships are essentially the same entity. This theory ignores the separate corporate forms of Defendants and the dealerships. The Court finds no facts to support collapsing the corporate forms; the dealerships' physical locations are not places of Defendants."). Thus, despite the fact that BMWNA and the dealerships have arms-length contractual agreements, without a finding supporting collapsing the corporate form, venue cannot attach based on the dealerships. And even in *Blitzsafe*, where the now-vacated Eastern District of Texas decision initially found venue based on dealerships, the court agreed that "there is not sufficient rationale to collapse the corporate forms of BMWNA and the dealerships." *Blitzsafe*, 2018 WL 4849345 at *12 n.15, *vacated by* 2019 WL 3494359.[9] And to reiterate,

---

[9] Judge Gilstrap in the Eastern District of Texas recently found venue was appropriate over Google LLC based on a third-party location, but the facts are

Omega has not alleged any facts to support piercing the corporate veil, let alone "clear evidence" to upend the "heavy presumption" that corporate entities are separate. *National Steel Car Ltd. v. Greenbrier Co., Inc.*, Civil Action No. 6:19-cv-00721-ADA, Slip op. at 5 (W.D. Tex. July 27, 2020).

The decision in *Board of Regents v. Medtronic PLC* is further instructive on this issue (that is, the imputation of the location of one corporate entity to another for venue purposes). Case No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (Yeakel, J.). Initially, the court there found that defendant Medtronic had "ratified" in-district locations of another corporate entity (a subsidiary of Medtronic) by listing the subsidiary's place of business on Medtronic's website, and in telephone and web-based directories, and placing a Medtronic sign on the exterior of the building. *Id.* at *2. On motion for reconsideration, the court found that Medtronic in fact had **not ratified** any of the in-district locations, because Medtronic and its subsidiary maintained corporate formalities:

> Except where corporate formalities are ignored and alter ego relationship exists, the presence of a corporate relative in the district does not establish venue over another separate and distinct corporate

---

distinguishable. There, Google required the third party to dedicate a "Google Secured Area" and publicly held out the location to be its own by telling customers to send devices to "us" (i.e., Google) by sending them to the third-party location. *Personalized Media Communications, LLC v. Google LLC*, Civil Action No. 2:19-CV-00090-JRG, (E.D. Tex. July 30, 2020). In contrast, BMWNA does not own or operate any part of the independent dealerships, and BMWNA expressly states on its public website that the dealerships are "non-affiliated companies" and "distinct entities." *See* https://www.bmwusa.com/privacy-policy/index.html.

relative. *See, e.g.*, *Post Consumer Brands, LLC v. General Mills, Inc.*, No. 4:17-CV-2471-SNLJ, 2017 WL 4865936, at *2 (E.D. Mo. Oct. 27, 2017). The court finds nothing in the case file that reflects anything other than that these three companies—Medtronic, Inc., Medtronic MiniMed, Inc., and its subsidiary MiniMed Distribution Corp.—are anything other than three separate corporate entities that maintain their corporate separateness. Further, nothing before the court reflects that Medtronic, Inc. has in any manner ratified the San Antonio building as a regular and established place for its business in this district. The court finds that the use of the common or generic name Medtronic on the exterior of the building, as well as the press releases announcing the business to be conducted in the district by Medtronic MiniMed, Inc., and its subsidiary MiniMed Distribution Corp., which are separate and distinct corporate entities, are insufficient to establish that venue in this district is proper for the Board's claims alleged against Medtronic, Inc. in this action.

*Id.* Despite Omega's similar allegations that Defendants advertise in the district and have a website that connects potential buyers to in-district dealerships, *see* D.I. 1 at ¶ 5–6, BMWNA's connection to the in-district dealerships is even more attenuated than Medtronic's was to its subsidiary. There, the companies were in the same corporate family—here, in contrast, the dealerships are true third parties and completely separate entities from BMWNA. The *Medtronic* court concluded that, as long as corporate separateness is maintained, venue cannot be established by imputing a place of business of one corporation to another. Therefore, if the *Medtronic* court was correct on the venue reconsideration as to the connection between Medtronic and a related subsidiary, given the corporate distinctiveness and separateness within the corporate Medtronic family, then it should be beyond cavil and dispute that wholly independent dealerships in the Northern District of Georgia

cannot impute venue to separate-company BMWNA.

All this law is why the Federal Circuit has made clear that a venue theory similar to the one Omega asserts is "frivolous." For example, in *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378 (Fed. Cir. 2019), the Federal Circuit held it was "frivolous" to argue that contractual relationships, like those between BMWNA and its dealerships, can establish venue, as Omega now does. D.I. 1 at ¶ 7. Indeed, Westech averred facts almost identical to Omega, specifically that the defendant maintained contracts with in-district distributors and even represented that they sold products in-district. 927 F.3d at 1381 (finding the appeal was frivolous as argued where plaintiff alleged that "Defendants maintain[ed] contractual relationships with distributors of the infringing products who [were] located in [the] judicial district, Defendants [had] sales representatives located in [the] judicial district, Defendants represent[ed] that they [sold] products in [the] judicial district, and Defendants earn[ed] substantial sales revenue from sales of the infringing products in [the] judicial district"). The Federal Circuit found Westech's argument "frivolous," and Omega's Complaint cannot sufficiently plead venue by echoing the same argument.

*Providing a warranty does not create venue.*

Omega alleges that BMWNA provides new car warranties but admits that warranty service is performed at the independent dealerships by technicians employed—not by BMWNA—but the independent dealerships. D.I. 1 at ¶ 8.

Offering a warranty for a product that is honored by a dealership does not convert a dealership into an established place of business of BMWNA. *Knapp-Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) ("Similarly, the fact that Casco's warranties against defective products were honored by its dealers and its authorized repair station does not mean that the company had a regular and established place of business in Chicago. This activity, although concerned with Casco's products, was conducted at places of business which were independently operated.").

BMWNA does no more than any other national distributor in a dealership relationship. Many national entities provide warranties that are serviced through local entities and provide interactive websites that direct customers to local dealers. Indeed, courts have found venue *improper* over defendants that also do this. *See Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293-RWS-RSP, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017); *Agis Software Dev., LLC, v. ZTE Corp.*, No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018).[10] To the extent that Omega may argue that BMWNA pays for and supervises warranties (D.I. 1 at ¶ 8)

---

[10] Defendant AT&T in *Sovereign* has a website directing customers to dealers in this District and offers warranty service through local entities. D.I. 43-4 (Ex. 2). Likewise, plaintiff in *Agis* explicitly alleged that defendant ZTE USA had a "customer facing website" and provided "warranty service" through a third-party. D.I. 43-5 at 7, 16 (Ex. 3). Another plaintiff alleged that ZTE USA's website identified local dealers, D.I. 43-6 at 4 (Ex. 4), and submitted a screenshot of the same. D.I. 43-7 (Ex. 5).

and this somehow elevates the dealerships into venue-anchoring places of business, Omega would be incorrect. Paying for repairs is precisely the point of a product warranty,[11] and as Omega admits, the technicians are all employed by (and are thus supervised and controlled by) the independent dealerships. D.I. 1 at ¶ 8. At any rate, consistently, the "abundant case law" says a dealership is *not* the place of business of the defendant. *EMED Techs.*, 2018 WL 2544564, at *2; n.8, *supra*. Accordingly, Omega cannot establish venue based on BMWNA providing a warranty for its products.

*The non-party dealerships are not agents of BMWNA and their places of business cannot be imputed to BMWNA under an agency theory.*

To the extent that Omega attempts to argue that the dealerships are "agents" of BMWNA and thus venue should somehow attach, Omega would be incorrect. While the Federal Circuit has held that a "regular and established place of business" requires the "regular, physical presence of an employee or other agent of the defendant conducing the defendant's business at the alleged 'place of business,'" no standing court decisions have found that a dealership meets this limitation. *In re Google*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (finding that Google's contracts with in-district hosts for its servers did not establish an agency relationship for venue

---

[11] The relevant definition of a warranty is "a usually written guarantee of the integrity of a product and of the maker's responsibility for the repair or replacement of defective parts." *See* https://www.merriamwebster.com/dictionary/warranty.

purposes).[12]

An agency relationship is a fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act. *In re Google*, 949 F.3d at 1345 (citing Restatement (Third) of Agency § 1.01). The essential elements of agency are (1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf, and (3) the consent by the agent to act. *Id.* (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)).

First, BMWNA does not direct or control the dealerships' actions. As noted, BMWNA and the dealerships conduct business via arms-length contractual agreements. D.I. 1 at ¶ 7. Further, state law *expressly prohibits* BMWNA from directing or controlling the actions of dealerships, except in very limited circumstances that do not apply. *See* Ga. Code Ann., § 10-1-664.1 ("Restrictions on ownership, operation, or control of dealerships by manufacturers and franchisors" stating it "shall be unlawful for any manufacturer or franchisor or any parent,

---

[12] *See Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, C.A. No. 2:17-cv-418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018) (finding dealership-based venue); 2019 WL 3494359 (E.D. Tex. Aug. 1, 2019) (granting motion to vacate venue decision); *Board of Regents v. Medtronic PLC*, Case No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (Yeakel, J.) (granting motion for reconsideration to ultimately find no venue).

affiliate, wholly or partially owned subsidiary, officer, or representative of a manufacturer or franchisor to own, operate, or control or to participate in the ownership, operation, or control of any new motor vehicle dealer in this state within a 15 mile radius of an existing dealer . . .").[13]

Second, BMWNA does not manifest consent that the dealerships should act on its behalf. Quite to the contrary, BMWNA expressly states on its public website that the dealerships are "non-affiliated companies" and "distinct entities."[14]

Third, the dealerships do not consent to act on BMWNA's behalf. The dealerships are distinct corporate entities, acting on their own behalf. Consistent with the Georgia state laws prohibiting BMWNA's control, the dealerships retain separate corporate ownership. This is manifested at least by their maintaining their own individual websites that highlight their own unique stories of their businesses:

BMW of South Atlanta (https://www.bmwofsouthatlanta.com/about-us/)

---

[13] *Cf. Ford Motor Co. v. Miles*, 967 S.W.2d 377, 380–82 (Tex. 1998) (recounting well-established Texas case law to support a finding that that local Ford dealers— even those performing warranty work—are not controlled the national distributor for the purposes of a state law venue statute more broadly worded than § 1400(b), which allowed venue wherever and out-of-state corporation had "an agency or representative"); *General Motors Corp. v. Washington*, 559 S.W.2d 425, 428 (Tex. Civ. App. 1977) (finding that warranty service performed by GM dealers did not establish that national distributor had local agent or representative needed to establish venue under state law).

[14] https://www.bmwusa.com/privacy-policy/index.html (identifying dealers as "non-affiliated companies that market our products and services such as our authorized BMW dealers who are distinct entities and have their own privacy policies").

"Clay, Slater, and Street Nalley's roots run deep. Since 1918, the Nalleys have thrived in the auto sales and service industry. Like their father, grandfather, and great grandfather, the sons have been paving their way in the auto retail world."

Nalley BMW of Decatur(https://www.nalleybmw.com/dealership/about.htm)

"At Nalley BMW of Decatur, it's not just about buying a car. It's about finding the perfect car for YOU. That means we take the time to get to know you - your aesthetic preferences, your hobbies, and your driving habits. We take all these items into consideration when assisting you in finding the car of your dreams."

BMW of Gwinnett Place (https://www.bmwofgwinnettplace.com/about-us/)

"BMW of Gwinnett Place is conveniently located at 3264 Commerce Avenue, Duluth, Georgia, 30096, and sells to customers in Atlanta, Duluth, Lawrenceville, Marietta, Roswell, Buford, Snellville, Conyers, Suwanee, East Point, Forest Park, Dunwoody, Sandy Springs, Mableton, Smyrna, Kennesaw, Alpharetta, Tucker, Redan and all other parts of Georgia and the entire Southeast."

Global Imports BMW (https://www.atlantabmw.com/staff/meet-our-team.htm)

"Global Imports BMW is Atlanta's Premier BMW dealership. Our facility includes an on-site cafe with complimentary Wi-Fi, a great selection of both new and Pre-Owned vehicles, one of the largest Parts departments in the city, BMW factory trained and Certified technicians to complement our expanding service department. Last but not least our professional and friendly staff that is ready to handle your needs down to the last detail."

United BMW (https://www.unitedbmw.com/about-us/)

"United BMW has two convenient locations to serve your needs. Visit us at 11458 Alpharetta Hwy in Roswell, Georgia, for all your Used, CPO, Service and Parts needs. Or stop by our new location at 1501 Alpharetta Highway, Alpharetta, Georgia to view all of our New Car inventory. United BMW serves customers throughout the south and across the entire United States."

The dealerships are thus not BMWNA's agents, are separate corporate

entities, and cannot establish venue in the Northern District of Georgia. Accordingly, Omega cannot establish venue under an agency theory.

The Court Should Award BMWNA Costs and Fees

The Court has inherent authority to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. *Costa & Grisson Machinery Co., Inc. v. Qingdao Giantway Machinery Co., Ltd.*, Civil Action No. 1:08-CV-2948-CAP, 2009 WL 10664780, at *14 (N.D. Ga. Dec. 2, 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). A court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* Though these powers must be exercised with restraint and discretion, assessing attorneys' fees is a "less drastic" sanction than, for example, dismissing a complaint with prejudice. *Id.* Costs and fees are justified to "confirm [a] court's obvious lack of jurisdiction" especially where an argument is "frivolous."    *Buckley v. Airshield Corp.* 86 F.3d 1175 n.3 (Fed. Cir. 1996) (citing *Sun-Tek Industries, Inc. v. Kennedy Sky-Lites, Inc.*, 856 F.2d 173, 177 (Fed. Cir. 1988); *In re Oximetrix, Inc.*, 748 F.2d 637, 644 (Fed. Cir. 1984); *Collins v. Amoco Prod. Co.*, 706 F.2d 1117, 1115 (11th Cir. 1983)).   Finally, a party is to be "commended" for a course of conduct that involves contacting the opposing side explaining clear precedent on an issue, allowing the opposing party a chance to cure, and filing a motion only as a last resort when that party refuses. *Id.* at n.3.

BMWNA alerted Omega to the deficiency in its venue pleading well in advance of filing this motion. Ex. 1. BMWNA offered to forgo filing this motion if Omega amended the Complaint to remove the dealerships as a basis for venue, but Omega refused, citing concerns about extra work to serve **BMWAG**. *Id.* BMWNA thus offered Omega a chance to cure its facially deficient complaint, but Omega refused, instead opting to press this frivolous argument. *Westech*, 927 F.3d at 1381. Thus, BMWNA requests its costs and fees in bringing this motion.

It was Omega's burden to establish that venue was appropriate. Omega instead pointed to non-parties' locations in the District, hoping that would be sufficient for venue. It is not. BMWNA offered Omega the opportunity to cure its defective complaint, but Omega refused. Thus, BMWNA respectfully requests the Court dismiss Omega's complaint and grant its costs and fees for having to brief this motion.

## FOURTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

Omega is not entitled to a determination that BMWNA willfully infringed any asserted patent at least because BMWNA has not infringed, is not infringing directly, indirectly, by inducement of infringement or contributory infringement, or in any way (either literally or under the doctrine of equivalents), any valid and enforceable claims of the '814 patent.

## FIFTH AFFIRMATIVE DEFENSE

**(Laches, Waiver, Acquiescence, Estoppel, and/or Statute of Limitations)**

Remedies requested by Omega under the asserted patents are barred by laches, including patent prosecution laches, waiver, acquiescence, estoppels, and/or 35 U.S.C. § 286.

## DEFENDANTS' RESPONSE TO OMEGA'S PRAYER FOR RELIEF

BMWNA denies any infringement of the '814 patent. BMWNA specifically denies the allegations by Omega of direct or indirect infringement of one or more claims of the '814 patent, either literally or under the doctrine of equivalents. BMWNA denies that Omega is entitled to any form of relief at all and denies that Omega is entitled to the relief sought in the prayer for relief. Accordingly, the prayer by Omega should be denied in its entirety with prejudice, and Omega should take nothing.

## DEMAND FOR JURY TRIAL

BMWNA, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, BMWNA, having completely and fully provided its Answer to the Complaint, prays for a final judgment against Omega, respectfully requesting the following relief:

A.    A judgment that the Complaint be dismissed with prejudice;

B.    A judgment that BMWNA does not and has not infringed, either

literally or under the doctrine of equivalents, the claims of the asserted patent;

C.     A judgment that the claims of the asserted patent are invalid;

D.     A judgment under 35 U.S.C. § 285 awarding BMWNA its costs and reasonable attorney's fees expended in defending and maintaining this action;

E.     A judgment awarding BMWNA its costs and reasonable attorney's fees expended in filing its Motion to Dismiss the Complaint for Improper Venue; and

F.     A judgment awarding BMWNA such other and further relief as the Court may deem just and proper.

Dated: August 3, 2020

Respectfully submitted,

*/s/ Samhitha Medatia*
Kara A. Specht (Ga. Bar No. 881687)
Samhitha Medatia (Ga. Bar No. 432323)
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
(404) 653-6400

*Attorneys for Defendant BMW of North America, LLC*

**Of Counsel:**

Lionel M. Lavenue (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**

11955 Freedom Drive, Suite 800
Reston, VA 20190
(571) 203-2700
lionel.lavenue@finnegan.com

R. Benjamin Cassady (*pro hac vice*)
Kai Rajan (*pro hac vice*)
Kevin J. Spinella (*pro hac vice*)
Courtney Kasuboski (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Defendant BMW of North
America, LLC*

## <u>CERTIFICATE OF SERVICE</u>

Counsel for Defendant BMW of North America, LLC hereby certifies that on August 3, 2020, the foregoing DEFENDANT'S ANSWER TO OMEGA PATENTS, LLC'S COMPLAINT was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Samhitha Medatia*
Samhitha Medatia (Ga. Bar No. 432323)